UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

BIAO HONG,

    Petitioner,

v.

MARKWAYNE MULLIN, et al.,[1]

    Respondents.

No. 1:26-CV-037-H

## ORDER

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Biao Hong, a native and citizen of China, is one such alien, having illegally entered the United States over seven years ago. His habeas petition, filed before the Fifth Circuit's decision in *Buenrostro-Mendez*, demands his immediate release or a bond hearing based on the text of the INA, its implementing regulations, and the Fifth Amendment's Due Process Clause. Dkt. No. 1.

In light of *Buenrostro-Mendez*, only Hong's due process claim remains. But due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Hong are not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. Therefore, the petition (Dkt. No. 1) is denied.

---

[1] Markwayne Mullin replaced Kristi Noem as Secretary of Homeland Security on March 26, 2026. Thus, he is automatically substituted as a party to this action. *See* Fed. R. Civ. P. 25(d).

## 1.    Background

In April 2019, Hong illegally crossed into the United States at an unknown location. Dkt. No. 13 at 5. Seven years later, he was apprehended by Immigration and Customs Enforcement (ICE) and was placed into removal proceedings with a Notice to Appear. *Id.* at 5–8; Dkt. No. 1 ¶ 25. The NTA charged him with removability on two bases. First, the NTA noted that Hong is an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. No. 13 at 5; *see* 8 U.S.C. § 1182(a)(6)(A)(i). Second, the NTA noted that Hong is "an immigrant who, at the time of application for admission, is not in possession of a . . . valid entry document required by this chapter[] and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required." *Id.*; *see* 8 U.S.C. § 1182(a)(7)(A)(i)(I).

It is unclear whether Hong requested a bond hearing. *See* Dkt. No. 1 ¶¶ 15, 138. But doing so would be futile in light of the Board of Immigration Appeals' opinion in *Matter of Yajure Hurtado*, which held that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025).[2]

---

[2] On February 18, 2026, the Central District of California purported to vacate *Yajure Hurtado*. *Maldonado Bautista v. Santacruz*, ___ F. Supp. 3d ___, No. 5:25-CV-1873, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026). But as the Court explained in *Calderon Lopez v. Lyons*, the Central District lacks authority to enter such relief. ___ F. Supp. 3d ___, No. 1:25-CV-226, 2025 WL 3683918, at *10–14 (N.D. Tex. Dec. 19, 2025). After hearing oral argument on the issue, the Ninth Circuit issued a stay pending appeal of the Central District's class-certification order, final judgment, and post-judgment vacatur of *Yajure Hurtado* on March 31, 2026. *See Maldonado Bautista v. EOIR*, Nos. 25-7958 & 26-1044, Dkt. No. 17 at 4 (9th Cir. March 31, 2026). *Yajure Hurtado* binds immigration judges, meaning it would be "an exercise in futility" to seek a bond hearing. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). Thus, Hong's petition does not present an exhaustion problem. *Id.*

Hong filed a petition for a writ of habeas corpus. Dkt. No. 1. The petition states three claims for relief—one involving Sections 1225 and 1226 of the INA, one based on the Fifth Amendment's Due Process Clause, and another based on the INA's implementing regulations. *Id.* ¶¶ 149–57. The Court ordered the respondents to show cause why Hong's petition should not be granted. Dkt. No. 5.

The day before the respondents' deadline to answer the show-cause order, Hong moved to dismiss his petition. Dkt. No. 10. The motion noted that Hong had been transferred from the Bluebonnet Detention Center in Anson, Texas, where he was detained at the time of his petition's filing, to Diamondback Correctional Facility in Watonga, Oklahoma, where he remains in custody. *Id.* at 1. The respondents timely answered (Dkt. No. 11) and responded to Hong's motion to dismiss (Dkt. No. 12) on the same day.

The Court denied Hong's ostensibly unopposed motion to dismiss without prejudice on February 26, 2026, noting that the parties "appear to dispute whether the motion . . . is agreed or opposed." Dkt. No. 14 at 1. The Court was troubled by the differing accounts of the required conference, the respondents' disagreement with "the bulk of the motion's substance[,]" and the respondents' noting that "dismissal at this time might not be in the interest of justice." *Id.* at 2 (quotation omitted). The Court agreed with the respondents that judicial efficiency weighed against dismissal, having spent "substantial judicial resources" reviewing "Hong's 74-page petition and the additional 126 pages of attachments"—not to mention reviewing and ruling on his motion for a temporary restraining order and issuing a Show-Cause Order to set a briefing schedule for his petition. *Id.* at 2–3.[3]

---

[3] Indeed, the Court noted that "it seems peculiarly inefficient to request dismissal of this action with the intent to refile in another district and wait for another court to duplicate this Court's work," "[p]articularly in light of Hong's request for emergency relief." Dkt. No. 14 at 3; *see also id.* at 2 n.2.

– 3 –

The parties' dispute also raised serious concerns regarding Hong's compliance with the Local Rules. *Id.* at 3; *see also In re Adams*, 734 F.2d 1094, 1098–99 (5th Cir. 1984) (noting that "local rules have the same force and effect as law, and are binding upon the parties"). Accordingly, the Court denied Hong's motion without prejudice to refiling, instructed him that any new motion should address the Court's concerns, and advised him that an opposed motion must contain an "accompanying brief [as] required by the Local Rules." *Id.* (citing Loc. Civ. R. 7.1(d)). But the Court has not heard from Hong since: He never filed a new motion to dismiss, and he neglected to file a reply brief as well.

While litigation was underway in this case, the Fifth Circuit issued its decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at 498. The Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp. *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-177, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026)).

## 2.   Legal Standard

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S.

Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### 3.    Analysis

Hong raises three claims in his habeas petition—one involving Sections 1225 and 1226 of the INA, one based on the Fifth Amendment's Due Process Clause, and one based on the INA's implementing regulations. Dkt. No. 1 ¶¶ 149–57. As explained below, *Buenrostro-Mendez* forecloses Hong's statutory and regulatory claims. Thus, the only claim left for consideration is his due process claim. The Court has considered whether the Due Process Clause entitles illegal aliens to individualized bond hearings in numerous prior cases.[4] Even so, the Court considers the arguments raised in Hong's briefing to address whether bond-less detention of aliens present in the United States violates the Constitution. The answer is no.

---

[4] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 2026 WL 81679; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Montelongo Zuniga v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-221, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025).

A.    *Buenrostro-Mendez* **forecloses Hong's INA and regulatory claims.**

Hong challenges his detention as unlawful under the INA and its implementing regulations. *Id.* ¶¶ 149–51, 156–57. But he is an "applicant for admission" within the meaning of Section 1225(a)(1). Section 1225 broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Hong is an "alien." He is "present in the United States." And he "has not been admitted" because he did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A) (defining "admission" and "admitted"). As an applicant for admission, binding Fifth Circuit precedent requires that he be detained without bond under Section 1225(b)(2)(A). *See Buenrostro-Mendez*, 166 F.4th at 498.

As for the INA's implementing regulations, even if Hong's reading of the relevant regulations were correct, he is not entitled to relief. Insofar as such regulations "contradict the plain text of [Section] 1225(b)(2)(A), the statute governs because 'a valid statute always prevails over a conflicting regulation.'" *Benitez v. Bradford*, No. 4:25-CV-6178, 2026 WL 82235, at *1 (S.D. Tex. Jan. 8, 2026) (Eskridge, J.) (quoting *Duarte v. Mayorkas*, 27 F.4th 1044, 1060 n.13 (5th Cir. 2022)).[5] Thus, Hong's INA claim fails.[6]

---

[5] The Fifth Circuit noted that "the government's past practice" of treating unadmitted aliens as subject to Section 1226(a) pursuant to those regulations "has little to do with the statute's text." *Buenrostro-Mendez*, 166 F.4th at 506.

[6] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.5.

**B.     The Due Process Clause does not require the government to give Hong a bond hearing.**

Next is Hong's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 ¶¶ 152–55. He argues that he "has a fundamental interest in liberty and being free from official restraint," and that his detention "without a bond redetermination hearing . . . violates her [sic] right to due process." *Id.* ¶¶ 154–55. His claim sounds in both substantive and procedural due process. *Id.* ¶ 28, 139–48. But either way, he is not entitled to relief.

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention. In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings. In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect

of the deportation process." *Id.* Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528. It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526. Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

A procedural due process claim fares no better. As an "applicant for admission," Hong has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding her application, for the power to admit or exclude aliens is a sovereign prerogative.").

Despite this, Hong's claim relies instead on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See* Dkt. No. 1 ¶¶ 139–48. The *Mathews* test, while common, is not the only tool for resolving procedural due process challenges. The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms." *Ladak v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-194, 2025 WL 3764016, at *7 (N.D. Tex. Dec. 30, 2025). The Supreme Court applied *Mathews* in *Landon v. Plasencia*,

emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad." *Id.* (citing 459 U.S. 21, 32–34 (1982)). Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen. *Landon*, 459 U.S. at 32. In the latter category, aliens "request[] a privilege and [have] no constitutional rights." *Id.*; *Thuraissigiam*, 591 U.S. at 138–39 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") (quotation omitted). Critically, aliens who are released into the United States pending removal "are treated for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (internal quotation marks omitted); *see* 8 U.S.C. § 1182(d)(5)(A) (noting that paroled aliens are not admitted and are "dealt with in the same manner as that of any other applicant for admission to the United States"); 8 C.F.R. § 1.2 (same).

### C. *Buenrostro-Mendez* forecloses Hong's frivolous Fourth Amendment argument.

Finally, Hong invokes the Fourth Amendment nearly two-dozen times throughout his 74-page petition. Although he does not raise a Fourth Amendment claim, he invokes the canon of constitutional avoidance in support of his statutory argument, arguing that Section 1225(b)(2)(A) must be construed to apply only "at or near the border." Dkt. No. 1 ¶ 123. This is so, he argues, because "allow[ing] DHS to arrest or detain aliens in the interior of the United States" without a statutory warrant requirement "is unconstitutional." *Id.*

The Court is unconvinced. For one, it is well-established that "[t]he Fourth Amendment does not require a warrant for an arrest made on probable cause." *United States v. Fortna*, 796 F.2d 724, 739 (5th Cir. 1986) (citing *United States v. Watson*, 423 U.S. 411 (1976)). And Hong acknowledges that the probable-cause standard is embedded in the statute authorizing immigration officers to make arrests. Dkt. No. 1 ¶ 122 (citing 8 U.S.C. § 1357); *see also* 8 C.F.R. § 287.8(c). With the constitutionally sufficient standard applied to immigration officers' statutory and regulatory arrest authority, the Court sees no need to invoke the constitutional-avoidance canon. This is particularly so, given that Section 1225 does not admit of a "fairly possible" construction that would limit its application to aliens at or near the border. *Crowell v. Benson*, 285 U.S. 22, 62 (1932).

Hong is therefore correct that, "[g]iven the clarity of the law in this area, the point need not be belabored." *Id.* ¶ 124. His Fourth Amendment argument is both frivolous and squarely foreclosed by *Buenrostro-Mendez*, which adopted precisely the construction Hong opposes on Fourth Amendment grounds. 166 F.4th at 498.

### 4.   Conclusion

In short, Hong, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A). *Buenrostro-Mendez*, 166 F.4th at 498. Nothing about the Due Process Clause requires a contrary conclusion. Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied.

So ordered on April 21, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

– 10 –